# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| KENNETH L. LENK,<br><br>    Plaintiff,<br><br>    v.<br><br>MONOLITHIC POWER SYSTEMS, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-02625-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MONOLITHIC POWER SYSTEMS, INC.'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>[Re: ECF 86, 121] |

Before the Court is Defendant Monolithic Power Systems, Inc.'s ("MPS") motion for attorneys' fees and costs. *See* ECF 86 ("Mot."). Plaintiff Kenneth Lenk ("Lenk"), proceeding *pro se*, opposes the motion. *See* ECF 95 ("Opp'n"). Lenk has also filed a "Motion to Alter or Amend Judgment" pursuant to Federal Rule of Civil Procedure 59, challenging a supposed judgment entered on November 27, 2017. *See* ECF 121. However, no judgment was entered on that date in this case. Rather, Lenk appears to be challenging the Court's November 27, 2017 Order granting MPS's administrative motion for leave to file a supplemental declaration in support of its motion for attorneys' fees and costs. *See* ECF 117.

Although Lenk did not respond to MPS's administrative motion within the time provided for by Civil Local Rule 7-11(b), the Court construes Lenk's "Motion to Alter or Amend Judgment" to be a request to file a supplemental opposition to MPS's motion for attorneys' fees. Therefore, the Court will consider Lenk's declaration along with MPS's supplemental declaration

in its determination of whether to award attorneys' fees and costs. *See* Declaration of Kenneth Lenk ("Lenk Decl."), ECF 121-1.[1]

For the reasons that follow, MPS's motion for attorneys' fees and costs is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

The facts of this case are well-known to the Parties and to the Court, and are discussed at length in this Court's Order Adopting Magistrate Judge's Report and Recommendation Granting Defendants' Motion to Dismiss, ECF 76, as well as its Order Denying Lenk's Motions for Relief from Judgment, ECF 112. The Court briefly summarizes the proceedings in this action.

Lenk originally filed a lawsuit on March 11, 2015 against his former employer, MPS, for employment discrimination and wrongful termination. *See* Case No. 15-cv-01148-NC ("Lenk I"). That case was assigned to Magistrate Judge Nathanael M. Cousins, who granted MPS's motion to dismiss Lenk's Third Amended Complaint without leave to amend for failure to statute a claim. *See* Lenk I at ECF 87. In dismissing the action with prejudice, Judge Cousins found that "Lenk has filed three complaints, several oppositions to motions to dismiss, and attached voluminous additional documentation with his complaints and motions." *Id*. at 5. Therefore, amendment of Lenk's claims would be futile because Lenk had no further facts that could remedy the deficiencies outlined by the court, and Lenk had been provided with several opportunities to amend his complaint. *Id*. Judgment was entered in favor of MPS and against Lenk in that action on March 31, 2016. *See* Lenk I at ECF 88.

On May 16, 2016, Lenk filed the instant action against MPS as well as Lenk's former supervisor at MPS, Maurice Sciammas, for discrimination and wrongful termination. *See* Case No. 16-cv-02625-BLF ("Lenk II"), ECF 1. It appears that the filing of the second action may have been triggered by Lenk's receipt of a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") on March 2, 2016, upon the dismissal of Lenk's EEOC charge for lack of evidence. *See* ECF 1-1 at 13. The Lenk II Complaint alleges that Lenk was subject to a hostile

---

[1] For these reasons, Lenk's motion to alter or amend judgment pursuant to Rule 59 is TERMINATED AS MOOT. *See* ECF 121.

2

work environment at MPS due to racial discrimination, which led to his resignation. The Lenk II Complaint contained two counts for discrimination and retaliation in violation of Title VII of the Civil Rights Act ("Title VII") and 42 U.S.C. § 1981.

MPS and Sciammas moved to dismiss the Complaint in Lenk II, ECF 47, and this Court referred the matter to Judge Cousins for a Report and Recommendation, ECF 67. Judge Cousins issued a Report and Recommendation that this Court grant defendants' motion to dismiss, because the issues were fully and fairly litigated in Lenk I, and Lenk's claims are barred by the doctrine of res judicata. *See* R&R, ECF 71. Judge Cousins found that despite the addition of Sciammas as a defendant and the repackaging of the suit as a discrimination case, the claims in Lenk II arose from the same nucleus of fact as those previously dismissed with prejudice in Lenk I, and thus there existed (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties as required for res judicata to apply. *Id*. at 4-6. Moreover, Judge Cousins held that the delayed EEOC right-to-sue letter did not impact the determination. *Id*. at 5-6.

Although the Court considered Lenk's timely objections to the R&R, the Court adopted Judge Cousins' recommendation to grant defendants' motion to dismiss the Lenk II Complaint because Lenk's claims were barred by res judicata. *See* ECF 76. In reviewing the R&R de novo, the Court overruled Lenk's objections on multiple grounds, and granted defendants' motion to dismiss the Complaint without leave to amend. *Id*. The Court emphasized Ninth Circuit authority holding that "Title VII claims are not exempt from the doctrine of res judicata where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their complaint to include their Title VII claims." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 710 (9th Cir. 2001). Because Lenk did not seek a stay in Lenk I for the purposes of pursuing his claim with the EEOC—indeed he did not even mention the EEOC letter although Lenk I remained pending at the time he obtained the letter—this Court rejected Lenk's argument that his Title VII claims could not have been litigated in Lenk I. *See* ECF 76 at 2-3.

After dismissing MPS's counterclaims against Lenk without prejudice to re-filing in state court, ECF 82, this Court entered judgment in favor of MPS and Sciammas, and against Lenk on

3

1    July 14, 2017. *See* Lenk II, ECF 84. Shortly thereafter, MPS moved for attorneys' fees and costs
2    against Lenk, arguing that MPS is entitled to $66,913.07 in fees incurred in defending the
3    allegations in Lenk II. *See generally* Mot. After the attorneys' fees motion was filed, Lenk
4    appealed the judgment to the Ninth Circuit, ECF 92, but he also filed three consecutive motions
5    for relief from judgment in this Court pursuant to Federal Rule of Civil Procedure 60. *See* ECF 89,
6    99, 113. MPS opposed all three motions, and the Court ultimately denied two of Lenk's motions
7    pursuant to Rules 60(a) and (b). *See* ECF 112. Lenk voluntarily withdrew his third Rule 60
8    motion. *See* ECF 119.

On December 4, 2017, with leave of Court, MPS filed a supplemental declaration in support of its attorneys' fees motion, requesting an additional $30,812.50 in fees and costs for opposing Lenk's Rule 60 motions. *See* Supp. Decl. of Hope Anne Case iso Mot. for Atty Fees ("Supp. Case Decl."), ¶ 23, ECF 118. As discussed above, Lenk then filed a motion to alter or amend judgment challenging MPS's supplemental declaration, which, although improper under Rule 59, shall be considered as a supplemental opposition to MPS's motion for attorneys' fees and costs. *See* ECF 121, 121-1.

## II.   LEGAL STANDARD

According to the "American Rule," in the absence of legislation that provides otherwise, litigants must pay their own attorneys' fees. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240 (1975). Pursuant to Federal Rule of Civil Procedure 54(d)(2), a party may make a claim for attorneys' fees and related nontaxable expenses when authorized by statute. Here, MPS moves for attorneys' fees and costs pursuant to Title VII and Section 1981, as authorized by 42 U.S.C. § 1988(b). *See* Mot. at 5.

Title VII provides for the award of attorneys' fees to the prevailing party in the district court's discretion. 42 U.S.C. 2000e–5(k). The standard for awarding attorneys' fees and costs under Section 1988(b) is identical to the Title VII standard. *See Mitchell v. Office of Los Angeles Cty. Superintendent of Sch.*, 805 F.2d 844, 847 (9th Cir. 1986) (holding that Title VII provides for attorneys' fees to the prevailing party and that "[p]arallel provisions are included in 42 U.S.C. § 1988 for cases brought under…section[] 1981."); *see also Moosa v. Dolan Foster Enterprises,*

4

*Inc.*, No. 95-03099 MHP, 1998 WL 30060, at *3 (N.D. Cal. Jan. 5, 1998) ("The standard for awarding attorneys' fees under section 1988(b) is identical to that under federal employment discrimination law, Title VII, 42 U.S.C. section 2000e–5(k)").

In a Title VII case, a district court has the discretion to award attorneys' fees to a prevailing defendant "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421 (1978); *see also Warren v. City of Carlsbad,* 58 F.3d 439, 444 (9th Cir.1995); *EEOC v. Bruno's Restaurant,* 13 F.3d 285, 287 (9th Cir.1993); 42 U.S.C. § 2000e-5(k). In *Christiansburg*, the seminal case establishing the standard for awarding attorneys' fees and costs to prevailing defendants in Title VII cases, the Supreme Court explained that because Congress intended to promote vigorous enforcement of Title VII, a district court must exercise caution in awarding fees to a prevailing defendant in order to avoid discouraging legitimate suits that may not be "airtight." 434 U.S. at 422; *see also Bruno's Restaurant,* 13 F.3d at 287. Because "the course of litigation is rarely predictable," district courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421-22; *see also Knadler v. Furth*, No. C04-01220 CRB, 2005 WL 2789223, at *1 (N.D. Cal. Oct. 26, 2005), *aff'd,* 253 F. App'x 661 (9th Cir. 2007).

The Ninth Circuit has cautioned that "[a]ttorneys' fees in civil rights cases should only be awarded to a defendant in exceptional circumstances." *Saman v. Robbins,* 173 F.3d 1150, 1157 (9th Cir.1999) (quoting *Barry v. Fowler,* 902 F.2d 770, 773 (9th Cir.1990)). The standard that a court may award attorneys' fees and costs to a prevailing defendant if it finds that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so," is strict, but not insurmountable. *Christiansburg*, 434 U.S. at 422. Although "[a] defendant stands in a different equitable position from that of a prevailing plaintiff…Congress intended to protect defendants from 'litigation having *no* legal or factual basis.'" *Mitchell v. Office of Los Angeles Cty. Superintendent of Sch.*, 805 F.2d 844, 847 (9th Cir. 1986) (citing *Christiansburg*, 434 U.S. at 420) (emphasis in original). "And, needless to say, if a plaintiff is

5

found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, 434 U.S. at 422.

### III. DISCUSSION

MPS argues that it is entitled to fees in this Title VII and Section 1981 action because MPS was the prevailing party and the Lenk II action was "frivolous, unreasonable, and groundless" both at the time of filing and thereafter. *See* Mot. at 5.[2] Lenk does not appear to dispute that MPS was the prevailing party, although he "continues to maintain his claims are valid and have merit." Opp'n ¶ 38.

The Court finds that MPS was the prevailing party in this case brought under Title VII and Section 1981 because its motion to dismiss the Complaint in Lenk II was granted with prejudice. In *CRST Van Expedited, Inc. v. E.E.O.C.*, the Supreme Court unanimously held that a defendant can recover fees in a Title VII action under the *Christiansburg* standard "when the case is resolved in defendant's favor, whether on the merits or not." 136 S. Ct. 1642, 1652 (2016). This is because "[i]mposing an on-the-merits requirement for a defendant to obtain prevailing party status would undermine that congressional policy by blocking a whole category of defendants for whom Congress wished to make fee awards available." *Id*. The Court's inquiry is therefore limited to whether Lenk's claims were frivolous, unreasonable, and groundless at the time of filing and thereafter.

The Court has considered the extensive factual and procedural records of Lenk I and Lenk II, as well as the relevant authority on awarding attorneys' fees to a prevailing defendant in a civil rights case. Although it presents a close call, the Court ultimately concludes that Lenk II was not "frivolous, unreasonable, or without foundation" from its inception. *See Christiansburg*, 434 U.S. at 421. Even though counsel for MPS informed Lenk prior to his filing of Lenk II that his claims would be barred, Lenk may still have reasonably believed that the EEOC right-to-sue letter

---

[2] Moreover, MPS explains that it paid Sciammas's fees for defense under California Labor Code § 2802 indemnification provisions, and thus MPS seeks fees and costs for the joint representation. *See* Mot. at 4 n.1; Decl. of Hope Anne Case iso Mot. for Atty Fees ("Case Decl.") ¶ 9, ECF 87.

6

supported additional claims against MPS. However, once it became clear that Lenk's claims were barred by res judicata and judgment was entered against him, Lenk's filing of three successive and entirely meritless Rule 60 motions clearly meets the *Christiansburg* standard. MPS is therefore entitled to its reasonable fees and costs for opposing Lenk's Rule 60 motions.

### A. Litigation in Lenk II Prior to Entry of Judgment

The Court first addresses whether MPS is entitled to its fees and costs incurred in defending Lenk II prior to the entry of judgment in its favor. MPS argues that Lenk II was "frivolous, unreasonable, and groundless" at the time of filing because it largely duplicated the recently dismissed Lenk I action. *See* Mot. at 6. MPS goes on to argue that the few non-redundant allegations in the Lenk II Complaint were self-defeating and "lacked all sense" as well as sufficient factual support. *Id*. For example, although the Complaint asserted a claim against MPS for racial discrimination, Lenk never alleged his race or provided any supporting factual allegations for this claim. *Id*. MPS also argues that in a separate action brought by Lenk against Freescale Semiconductor, Inc., Lenk admitted that he voluntarily resigned from MPS, which contradicted his allegations in both Lenk I and Lenk II that MPS "constructively terminated him." *Id*. at 6-7.

In addition, MPS argues that Lenk II was frivolous, unreasonable and groundless because when Lenk attempted to serve the Complaint and Summons in Lenk II on MPS, counsel explained to Lenk that definitive Ninth Circuit authority precluded Lenk from relying on his delayed EEOC right-to-sue letter. *Id*. at 7 (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 710 (9th Cir. 2001)). As discussed above in the procedural background of this case, both Judge Cousins and this Court were ultimately persuaded that *Owens* defeated Lenk's arguments that his Title VII claim was not barred by res judicata. Finally, MPS asserts that adding Sciammas as a defendant in Lenk II was frivolous from the beginning because nothing in the EEOC charge or right-to-sue letter mentioned Sciammas, and Sciammas was not named in either count of the Complaint. *See* Opp'n at 7. Rather, MPS describes Lenk's addition of Sciammas in his individual capacity as a "ploy to attempt to superficially differentiate [Lenk's] second lawsuit from his first." *Id*.

7

In his opposition, Lenk continues to assert that his claims have merit, that he did not act in bad faith, and that he should not be subject to legal fees and costs. *See* Opp'n ¶ 41. He relies heavily on *Christiansburg*, and further emphasizes his belief that MPS engaged in "bad behavior, illegal activity and questionable actions" that led him to pursue "valid litigation" against his former employer. *Id.* ¶¶ 38, 43.

Many of MPS's arguments are persuasive in the context of a motion to dismiss, which this Court ultimately granted without leave to amend on its first pass of the pleadings. However, even though Lenk's claims obviously lacked merit in hindsight, the Court must consider the impact of the delayed EEOC right-to-sue letter on Lenk's decision to file a new lawsuit. The Court also weighs Lenk's status as a *pro se* litigant, which may have prevented him from fully understanding the complex legal significance of the right-to-sue letter as well as the principles of res judicata that ultimately led to a dismissal of his suit.

In evaluating whether attorneys' fees should be awarded to a prevailing defendant under Title VII, the court must assess whether the plaintiff *could reasonably have believed* that he or she had an adequate basis in law and fact to pursue the claim. *See Mitchell*, 805 F.2d at 846–47. Lenk could reasonably have believed that he had an adequate basis to pursue his discrimination claims against MPS and Sciammas. Although it turned out that Lenk did not have any colorable claims that differentiated the suit from Lenk I, as a *pro se* litigant, Lenk could have reasonably believed that the EEOC right-to-sue letter provided him with a new basis to pursue his claims. Indeed, the evidence suggests that he *did* hold this belief and communicated it to MPS when he served the Lenk II Complaint.

Although Lenk is a disgruntled former employee, not a prisoner, the Court finds the reasoning in *Hughes v. Rowe* persuasive. 449 U.S. 5, 15–16 (1980). In *Hughes*, the Supreme Court reviewed the lower court's application of the *Christiansburg* standard to an award of attorneys' fees against the *pro se* prisoner-plaintiff, and held that the allegations in the complaint "are definitely not meritless in the *Christiansburg* sense." 449 U.S. at 15. The Court explained that *Christiansburg*'s limitations "apply with special force in actions initiated by uncounseled

prisoners." *Id*. "The fact that a prisoner's complaint, even when liberally construed, cannot survive a motion to dismiss does not, without more, entitle the defendant to attorney's fees." *Id*.

Importantly, the Supreme Court emphasized the *pro se* status of the plaintiff: "An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims. As the Court noted in *Christiansburg*, even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit." *Id*. (citing *Christiansburg*, 434 U.S., at 422). Therefore, although MPS quickly prevailed on its motion to dismiss, that does not in and of itself evidence that Lenk's claims were frivolous, unreasonable, or groundless at the time the suit was filed.

MPS argues that Lenk's *pro se* status should not insulate him from an award of attorneys' fees and costs under *Christiansburg*. *See* Mot. at 7-8. However, the Court has reviewed the cases cited by MPS and finds that they do not support MPS's arguments regarding its defense of Lenk II prior to the entry of judgment. For example, in *Rodas v. McCullough*, attorneys' fees and costs were awarded against a *pro se* litigant after the court granted the defendant's motion to dismiss for failure to prosecute. No. C 12-2541 PJH, 2013 WL 5400287, at *2 (N.D. Cal. Sept. 26, 2013) (noting that "[i]n addition to failing to attend court mandated hearings and settlement conferences, plaintiffs failed to respond to the motion for attorney's fees. Plaintiffs' failure to respond provides the court with no evidence to support the claims and assertions found in plaintiffs' complaint."); *see also Pearson v. Clark Cty.*, No. 2:04-CV-942-BES-RJJ, 2008 WL 117889, at *2 (D. Nev. Jan. 7, 2008) (finding that plaintiff's failure to respond to motion for summary judgment made it "impossible for the Court to find that Plaintiff's claims were not baseless in light of his utter failure to provide any evidence or otherwise prosecute his action.") In contrast, Lenk actively litigated this case prior to judgment, including filing an opposition to the defendants' motion to dismiss and filing objections to the R&R. *See* ECF 57. Moreover, Lenk continues to litigate his case on appeal. *See* ECF 92.

Perhaps most similar to this case is *Robinson v. Cunan*, where the court awarded attorneys' fees under the *Christiansburg* standard because the *pro se* plaintiff was "clearly on notice that his claims were frivolous and barred on res judicata grounds." No. 2:10-CV-2464-MCE-JFM, 2012

9

WL 458493, at *1 (E.D. Cal. Feb. 10, 2012). However, in *Robinson*, the *pro se* plaintiff's *two* previously filed actions against the same defendant on the same grounds were barred by res judicata, and the court found the claims to be not cognizable on both occassions. *Id*. Here, this Court's order adopting Judge Cousins' R&R granting defendants' motion to dismiss was the first time Lenk was put on notice by the Court that his claims against MPS and Sciammas were barred by res judicata.

For these reasons, MPS's motion for attorneys' fees and costs is DENIED to the extent it seeks to recover amounts incurred prior to the entry of judgment in Lenk II. However, *Robinson* and other authority strongly supports MPS's argument that Lenk's successive Rule 60 motions were frivolous under *Christiansburg*. *See* Reply at 5, ECF 98; *see also* Supp. Case Decl. ¶ 2.

**B.     Lenk's Successive Rule 60 Motions**

Lenk was clearly advised of the basis for dismissal of his Title VII and Section 1981 claims on grounds of res judicata on May 8, 2017, and judgment was entered against him on July 14, 2017. *See* ECF 76, 84. The Court emphasizes that Lenk was fully within his rights to appeal this Court's determination of his case to the Ninth Circuit Court of Appeals, which he did on August 14, 2017. *See* ECF 92. However, Lenk also chose to file three Rule 60 motions in this Court. The Court finds that these motions warrant an attorneys' fees award to MPS under *Christiansburg*, because Lenk continued to litigate his civil rights claims after they clearly became "frivolous, unreasonable, or groundless." 434 U.S. at 422. MPS is therefore entitled to its reasonable attorneys' fees and costs in opposing Lenk's frivolous Rule 60 motions.

The Supreme Court was clear that "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422. Here, the Court considered Lenk's opposition to the defendants' motion to dismiss, as well as his numerous objections to Judge Cousins' R&R. *See* ECF 76. All of Lenk's objections were overruled, and the Court clearly explained its basis for dismissing the Lenk II Complaint without leave to amend on grounds of res judicata. *Id*. Lenk was served with the Court's Order by mail on May 9, 2017. *See* ECF 76-1.

10

On the same day that Lenk filed his notice of appeal to the Ninth Circuit, Lenk filed a motion for relief from judgment pursuant to Rule 60(b)(3). *See* ECF 89 ("First Rule 60 Motion"). A few days later, Lenk filed a motion for relief from judgment pursuant to Rule 60(a). *See* ECF 99 ("Second Rule 60 Motion"). Although Lenk's arguments relied on separate provisions for relief, the factual basis for his request was largely the same in both motions. For example, Lenk argued at length about alleged fraudulent behavior by MPS and Sciammas that constitute "fraud on the court" and warrant the reopening of *both* Lenk I and Lenk II. *See generally* First Rule 60 Motion; Second Rule 60 Motion ¶¶ 25-29. Lenk also repeated his arguments that he sought relief pursuant to Rule 60(b)(6) in both motions.

Defendants filed two separate oppositions to the Rule 60 motions. *See* ECF 102, 106. On September 13, 2017, the Court denied both motions, explaining that Lenk's dissatisfaction with the court's order is not proper grounds for relief under Rule 60. *See* ECF 112. The Court viewed the majority of Lenk's arguments as "an attempt to relitigate (or litigate for the first time, via amendment) the merits of this case, which the Court dismissed on grounds of res judicata…A motion for relief from judgment is not an appeal or an otherwise proper vehicle to relitigate the underlying claims at issue." *Id*. at 8.

Lenk then filed a third motion for relief from judgment pursuant to Rule 60(b)(2) which sought to relitigate and amend the same claims dismissed in Lenk I and Lenk II. *See* ECF 113 ("Third Rule 60 Motion"). Defendants opposed the Third Rule 60 Motion, arguing that it "tediously raises arguments that the Court has examined and rejected previously and should be denied." ECF 114 at 1. Lenk voluntarily withdrew his Third Rule 60 Motion in the face of defendants' threatened motion for Rule 11 sanctions. *See* ECF 119.

The Court finds that all three of Lenk's Rule 60 motions were attempts to re-litigate his previously dismissed claims by disingenuously couching his arguments in terms of Rule 60 motions for relief. *See, e.g.*, Second Rule 60 Motion ¶ 32 ("Plaintiff asserts that the court made an oversight in the recent ruling on res judicata"); Lenk Decl. ¶ 13 ("Lenk, in his effort to improve judicial efficiency, reasoned that submitting motions in this court is a more effective use of time that [sic] utilizing the appeal format."). Accordingly, Lenk's Rule 60 motions fit squarely within

the ambit of *Christiansburg*, because he continued to litigate his barred claims after it became clear that his claims against MPS and Sciammas were frivolous, unreasonable, or groundless. 434 U.S. at 422. Other courts have awarded attorneys' fees and costs under the *Christiansburg* standard when *pro se* plaintiffs engage in vexatious litigation tactics. *See, e.g.*, *Jones v. Las Vegas Valley Water Dist.*, No. 2:11-CV-00435-KJD, 2012 WL 3060957, at *2 (D. Nev. July 26, 2012) ("Given Plaintiff's litigation history in this District, it is apparent that an award of attorneys' fees is appropriate to deter further harassing and costly litigation and waste of judicial resources."); *Clark v. Nevans*, No. CIV S-07-1086, 2008 WL 2037976, at *1 (E.D. Cal. May 5, 2008), *report and recommendation adopted*, No. CIV S-07-1086, 2008 WL 5133567 (E.D. Cal. Dec. 5, 2008).

Based on the arguments presented as well as the voluminous documents submitted by both Parties, the Court agrees with MPS that Lenk has engaged in ongoing frivolous litigation tactics related to his previous employment at MPS that two federal courts have now dismissed with prejudice in Lenk I and Lenk II. Lenk's arguments that he can somehow "defeat res judicata" are properly directed to the Ninth Circuit, and his filing of successive Rule 60 motions in this Court warrants an award of reasonable fees and costs to MPS.

### C. Reasonableness of Requested Attorneys' Fees

As discussed above, the Court only awards attorneys' fees and costs to MPS in connection with its defense of Lenk's Rule 60 motions, and not for its defense of the action prior to dismissal of Lenk's claims and entry of judgment. Therefore, MPS's request for $66,071 in fees and $842.07 in costs for defending Lenk II prior to the entry of judgment is DENIED, and the Court need not determine whether those fees and costs are reasonable. The Court must only calculate a reasonable fee award to MPS for its oppositions to Lenk's Rule 60 motions. The Court has considered MPS's request for $30,812.50 in attorneys' fees and costs for this work. *See* Supp. Case Decl. ¶ 23. The Court also considers Lenk's opposition to these supplemental fees, submitted in his declaration in support of his "Motion to Alter or Amend Judgment," in which he accuses counsel for MPS of "padding" their fees. Lenk Decl. ¶¶ 10-11.

For the reasons that follow, the Court will award MPS reasonable attorneys' fees in the amount of $17,582.50, and costs in the amount of $83.24, for a total of $17,665.74.

### i. Lodestar Method

In calculating awards for attorneys' fees, courts use "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)) (internal quotation marks and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation. *Hensley*, 461 U.S. at 433. The documentation must be "sufficiently detailed that a neutral judge could make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Jordan v. Multnomah County,* 815 F.2d 1258, 1263 (9th Cir.1987). In the absence of adequate documentation supporting the number of hours expended on the lawsuit, "the district court may reduce the award accordingly." *Id.* "The district court also should exclude from this initial [lodestar] calculation hours that were not 'reasonably expended.'" *Id.* at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)).

When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984). Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation. *Morales*, 96 F.3d at 363-64, 363 nn.3-4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).[3]

---

[3] The factors typically considered include, but are not limited to, those set forth in *Kerr*: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or

13

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Camacho*, 523 F.3d at 978 (internal quotation marks and citation omitted). For example, "a district court may reduce attorneys' fees by a percentage, so long as the court sets forth clear and concise reasons for adopting this approach." *Id*. at 982. The Ninth Circuit has recognized that "percentages indeed are acceptable, and perhaps necessary, tools for district courts fashioning reasonable fee awards." *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992). However, the district court may not impose an arbitrary percentage reductions – the court must offer "some explanation for the precise reduction chosen." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001).

In determining an award of attorneys' fees to a prevailing defendant against a pro se litigant, the Ninth Circuit requires district courts to consider a plaintiff's pro se status and financial resources. See *Horn v. Carter*, 360 Fed. Appx. 851, 852 (9th Cir. 2009).

### ii. Hourly Rates

MPS seeks to recover fees for work performed by two attorneys: Hope Anne Case and Adrianna A. Rubino. *See* Mot. at 9. Ms. Case is the partner who directed MPS's defense and has been practicing employment litigation in California for 25 years. *See* Case Decl. ¶¶ 4, 10. Ms. Rubino is the primary associate who assisted Ms. Case with the defense, including the oppositions to Lenk's Rule 60 motions. *See* Supp. Case Decl. ¶ 5.

In the motion for fees, Ms. Case requests the hourly rate charged to MPS of $515.00, which was discounted from her standard hourly rate of $545.00 at the time the action commenced and her current hourly rate of $575.00. *See* Supp. Case Decl. ¶ 4. She has extensive experience litigating misclassification, wage and hour, wrongful termination, breach of contract, common law tort, and discrimination, retaliation, and harassment suits in state and federal courts throughout

---

contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

14

California. *See* Case Decl. ¶ 3. She has also served as outside employment counsel to MPS for years prior to the filing of Lenk II, including as outside counsel for MPS in Lenk I. *Id*. ¶ 5.

Ms. Rubino requests an hourly rate of $235.00, which is also discounted from her standard hourly rate. *See* Supp. Case Decl. ¶ 6. Ms. Case states that these rates have been found reasonable by other courts in this district. Case Decl. ¶ 11 (citing *Andrade v. Arby's Rest. Grp., Inc. et al.*, 225 F. Supp. 3d 1115 (N.D. Cal. 2016)). Moreover, "[i]n the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'" *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591–92 (N.D. Cal. 2015). MPS's requested rates for Ms. Case and Ms. Rubino actually fall *below* these parameters, and based on the Court's prior experience, the Court finds these rates to be reasonable in light of the attorneys' skill and experience.

Lenk does not explicitly challenge the requested rates. Rather, Lenk makes general accusations that MPS "padded" its legal fees. *See* Lenk Decl. ¶¶ 10-11. Lenk also generally challenges the total amount sought by MPS as fraudulent and illegal because MPS sought *less* recovery in its motion than it asserts to have actually incurred in defending Lenk II. *See* Opp'n ¶¶ 7-10. Lenk cites to no authority preventing attorneys from seeking to recover a discounted rate or amount. Indeed, MPS's discounted rates support the reasonableness of their requested recovery in this case.

The Court concludes that MPS has established that the hourly rates requested by their attorneys ($515 for Ms. Case and $235 for Ms. Rubino) are reasonable, and that Lenk has failed to present evidence showing that the rates are unreasonable.

### iii. Hours Expended

The Court next considers the reasonableness of the hours expended. The Court cannot "uncritically" accept MPS's representations; rather, it must assess the reasonableness of the hours requested. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984). In making this determination, the Court can reduce hours when documentation is inadequate, or when the requested hours are redundant, excessive, or unnecessary. *Hensley*, 461 U.S. at 433–34.

Defense counsel for MPS has submitted detailed billings and hourly records demonstrating that Ms. Case and Ms. Rubino collectively spent 42.3 hours preparing MPS's opposition to Lenk's First Rule 60 Motion. *See* Supp. Case Decl. ¶ 12. This sum represents 10.7 hours of Ms. Case's time at $515 per hour (totaling $5,510.50) and 31.6 hours of Ms. Rubino's time at $235 per hour (totaling $7,426.00). *Id*. Thus, MPS seeks to recover $12,936.50 in fees for opposing Lenk's First Rule 60 Motion. *Id*.

MPS's opposition to the First Rule 60 Motion was a well-reasoned 10-page brief. *See* ECF 102. In addition to rebutting Lenk's arguments under Rule 60, counsel had to address whether this Court retained jurisdiction to consider Lenk's motion given that Lenk had already filed a notice of appeal. *Id*. at 4. With respect to MPS's opposition to Lenk's First Rule 60 Motion, the Court finds that there is no overbilling and the total number of hours claimed (42.3) were reasonably incurred in defense of Lenk's First Rule 60 Motion. The lodestar is an appropriate award of attorneys' fees for this work, which is calculated as the reasonable hourly rate proffered by defense counsel multiplied by the hours. Thus, MPS is entitled to $12,936.50 for opposing Lenk's First Rule 60 Motion.

MPS seeks to recover an additional $12,951.00 in fees for attorney time spent opposing Lenk's Second Rule 60 Motion. *Id*. ¶ 13. This amount reflects a total of 42.6 hours preparing MPS's opposition, with Ms. Case spending 10.5 hours at $515 per hour for a total of $5,407.50, and 32.1 hours of Ms. Rubino's time at $235 per hour totaling $7,543.50. However, the Court finds that it is unreasonable to award the full amount of requested fees since much of the work was duplicative of MPS's opposition to Lenk's First Rule 60 Motion. MPS's second opposition was another 10-paged brief that contained a similar introduction and factual background, and repeated many of the same arguments regarding the procedural history of the case and the meritless nature of Lenk's filings. *See* ECF 106. While the Court recognizes that certainly some hours expended in opposing Lenk's Second Rule 60 Motion is justified, it is not reasonable to expend the same amount of time opposing the Second Rule 60 Motion when MPS had already opposed the first.

Lenk argues in his opposition that while he expected MPS to spend some time reviewing his motions, if MPS truly thought that his claims were baseless then "there is no reason to spend

1  additional time on a baseless claim." Lenk Decl. ¶ 10. Although the Court ultimately agreed with

2  MPS that Lenk's claims were baseless in all respects, ECF 112, the majority of the requested

3  hours spent opposing Lenk's Second Rule 60 Motion were duplicative and unnecessary. While

4  the Court appreciates that Rule 60(a) and Rule 60(b) present distinct legal standards, billing a

5  nearly identical number of hours to respond to a duplicative and meritless motion is excessive

6  given the experience of counsel. *See Hernandez v. Taqueria El Grullense*, No. 12-CV-03257-

7  WHO, 2014 WL 2611214, at *2 (N.D. Cal. June 11, 2014) (reducing hours spent because "highly

8  skilled attorneys billed excessive hours for routine and duplicative work") (citing *Hensley*, 461

9  U.S. at 434).

10  For these reasons, the Court will reduce Ms. Case's time by 7 hours and Ms. Rubino's time

11  by 20 hours. Applying counsel's hourly billing rates, those reductions in hours translate to

12  reductions in fees in the amounts of $3,605 and $4,700, respectively. The Court therefore finds

13  that MPS reasonably incurred attorneys' fees in the amount of $4,646 for time spent opposing

14  Lenk's Second Rule 60 Motion and it will award MPS fees in that amount.

15  As discussed above, Lenk's Third Rule 60 Motion was also frivolous under the

16  *Christiansburg* standard. However, in its opposition to Lenk's third motion, MPS explained that it

17  would also be serving a Rule 11 sanctions motion on Lenk based on his third motion. *See* ECF

18  114 at 1 ("In relation to this latest filing, MPS, in accordance with pre-filing requirements, is

19  serving a Rule 11 sanctions motion on Plaintiff based on the instant Motion, which MPS expects

20  to file if the safe harbor period for the sanctions motion expires without cure."). MPS further

21  explained that "should Plaintiff not withdraw the [Third Rule 60] Motion following MPS's service

22  of its Rule 11 Motion, Plaintiff's Motion should be denied and sanctions imposed against

23  Plaintiff." *Id*. at 8. In MPS's letter serving its Rule 11 Motion on Lenk, dated November 20, 2017,

24  MPS explained that Lenk had 21 days to correct his Rule 11 violation by withdrawing his Third

25  Rule 60 Motion. *See* Lenk Decl. Exh. B-1. Lenk then promptly withdrew his Third Rule 60

26  Motion within the allowable time. *See* ECF 119 (Filed December 4, 2017).

27  Lenk argues that MPS gave him the impression that additional fees would not be requested

28  in exchange for his withdrawal of the Third Rule 60 Motion. *See* Lenk Decl. ¶ 9. With respect to

fees for MPS's opposition to the third motion, Lenk's belief is reasonable in light of MPS's November 20, 2017 letter. The Court finds that the parties had an agreement whereby if Lenk withdrew his Third Rule 60 Motion within 21 days, MPS would not seek sanctions which could have included part or all of its reasonable attorney's fees and other expenses directly resulting from the violation. *See* Fed. R. Civ. P. 11(c)(4). Awarding fees to MPS even though Lenk withdrew his third motion is not reasonable under these circumstances. Otherwise, Lenk has nothing to gain from his withdrawal of the third motion. Accordingly, the Court will not award MPS any fees for its opposition to Lenk's Third Rule 60 Motion.

The reductions described above are also necessary in light of Lenk's *pro se* status, which must be considered along with Lenk's financial condition when awarding fees to a prevailing defendant in these circumstances. *See Horn v. Carter*, 360 Fed. Appx. 851, 852 (9th Cir. 2009). Although Lenk originally paid the filing fee in this case, the Ninth Circuit recently granted his request to proceed *in forma pauperis* on appeal. *See* ECF 120. Given that MPS requested a total of $97,725.57 in fees ($66,913.07 for defending the case until judgment, plus $30,812.5 for opposing the Rule 60 motions), the Court finds that a fee award of $17,582.50 is reasonable considering both Lenk's financial condition as well as the exceptional circumstances of this case. *See Saman v. Robbins,* 173 F.3d at 1157.

### D. Attorneys' Fees Award

In light of the above discussion, the Court finds that MPS is entitled to an attorneys' fees award in the amount of $17,582.50, calculated as follows:

| Task | Reasonable Attorneys' Fees Awarded |
|---|---|
| Opposing First Rule 60 Motion | $12,936.50 |
| Opposing Second Rule 60 Motion | $4,646.00 |
| Opposing Third Rule 60 Motion | $0 |
| Total | $17,582.50 |

### E. Costs

In addition, MPS seeks $83.24 as reimbursement for costs related to opposing Lenk's Rule 60 Motions. Case Decl. ¶¶ 15, 16, 21. Specifically, MPS seeks $27.66 for serving oppositions to Lenk's First and Second Rule 60 Motions, and $27.92 in costs in connection with service of its opposition to Lenk's Third Rule 60 Motion. These costs were necessary because Lenk did not sign up for ECF service in Lenk II, requiring MPS to serve Lenk by mail with each opposition. *Id.* ¶ 14. Finding these costs reasonable, the Court awards MPS $83.24 in costs.[4]

## IV. ORDER

For the foregoing reasons, MPS's motion for attorneys' fees and costs is GRANTED IN PART AND DENIED IN PART. IT IS HEREBY ORDERED that MPS shall recover attorneys' fees from Lenk in the amount of $17,582.50 and costs in the amount of $83.24, for a total of $17,665.74.

Dated: January 19, 2018

BETH LABSON FREEMAN
United States District Judge

---

[4] Although the Court does not award attorneys' fees in connection with MPS's opposition to Lenk's Third Rule 60 motion, it finds that as the prevailing party, MPS is entitled to its reasonable costs for service of all three motions.